## Western & Southern Life Insurance Company v. Beard's Administrator.

(Decided June 24, 1932.)

BRUCE & BULLITT, for appellant.

J. H. HOLLADAY, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On January 28, 1924, the Western & Southern Life Insurance Company issued to Edgar A. Beard one of its "Employee's Death Benefit Certificates" containing the following provisions:

"The Western & Southern Life Insurance Company promises to pay on receipt of due proof of the death of Edgar A. Beard of Louisville, Kentucky, to Estate, *provided said employee shall have been continuously for six months or more immediately preceding such death in the actual service of said Company,* and has been given this certificate during the course of his employment, subject to the conditions hereinafter provided, the following amount: . . .

"If death occur after three years from date hereof, $1000.

"*The benefits hereunder shall terminate immediately upon cessation of the employment of said employee by said company and this certificate thereby is automatically cancelled, and is not revived or validated by re-employment.* Cessation of employment shall include the *discharge* of the employee by such company or notice thereof, *resignation of the employee or any discontinuance* of the active and exclusive service to the company of the employee.

"If the cessation of employment of such employee shall result from employee's illness, *and the illness is contracted while in the employ of the com-*

*pany, such illness totally, continuously and permanently incapacitating said employee so as to render said employee incapable of performing any work or following any occupation or engaging continuously and permanently in any service or business for wages, remuneration or profit and such illness shall cause the death of said employee, then upon such death, the beneficiary shall be paid that amount, which would have been paid, subject to the provisions of this certificate, if such death had occurred on the day of such cessation of employment."*

Beard was first employed as an agent on August 6, 1923. On January 31, 1927, he was promoted to assistant superintendent. He occupied that position until October 27, 1927, when he was demoted and employed as agent. He continued his services as agent until October 22, 1928, when he was discharged. He died on June 9, 1929.

Payment having been refused, this suit was brought by Beard's administrator to recover on the policy. The ground of recovery was that the cessation of Beard's employment resulted from illness contracted while he was in the employ of the company, and that such illness totally, continuously, and permanently incapacitated him so as to render him incapable of performing any work, or following any occupation, or engaging continuously and permanently in any service or business for wages, remuneration, or profit, and that such illness caused his death. Issue was joined, and at the conclusion of the evidence the trial court directed a verdict in favor of plaintiff. The company appeals.

Appellant first insists that it was entitled to a peremptory on the following grounds: The certificate declares that its benefits shall terminate immediately upon cessation of the employment, and that the certificate is thereby automatically cancelled, and is not revived or validated by re-employment; that Beard was first discharged as assistant superintendent on October 27, 1927, and his re-employment as agent did not take effect until October 31, 1927, thus presenting a case where the certificate was automatically cancelled and was not revived or validated by his re-employment. It is true that Payton, a witness for the company, testified that Beard served as assistant superintendent until October 27, 1927, and that

he assumed an agency for the company in the same district on October 31, 1927. Standing alone this evidence might carry with it the inference that there was a period of three days during which Beard was not employed by the company, but all doubt was removed by the testimony of G. V. Hiatt, assistant manager of appellant's claim department, who deposed that Beard was with the company as an agent, or in its employ, continuously from August, 1923, until October 22, 1928.

The next ground urged for reversal is that the proof did not show that Beard's disability was either total, continuous, or permanent prior to his discharge on October 22, 1928. On this question the evidence may be summarized as follows: Joseph P. Neff said that Beard was short of breath and not able to walk over his territory as he had formerly done. He saw Beard about the middle of the week before he left the company. Beard appeared very weak. He saw Beard ten days or two weeks after he quit the company and took him to a show and brought him back in a taxicab. He saw him ten days or two weeks later, and Beard was flat on his back. According to Mildred Curl, who saw Beard often, Beard would get out of breath and could not walk any distance without giving out. About ten days after Beard left the company they took him for a walk. Beard got out of breath and they were forced to bring him back. Dr. E. J. Tracy visited Beard in 1925 for acute la grippe and acute bronchitis. His bronchitis became chronic, and afterward he had chronic myocarditis. He was not able to do vigorous walking, but a little light exercise would not be injurious to him. Eight hours walking over concrete five days per week was too strenuous, but two and one-half days, if broken into intervals in proportion to each day, would be all right. Dr. P. Guntermann treated Beard on January 7, 1929, for la grippe, and at that time he had a very bad heart. Beard was unable to work at an occupation that required a considerable amount of walking. In answer to a hypothetical question, he stated that he did not think Beard was able to work at any occupation in October, 1928. W. R. Hoffman, assistant superintendent in October, 1928, at the time of Beard's discharge, testified as follows:

"The superintendent told him to make his final because he was not in good enough health to take care of his debit."

Brooks, the superintendent at the time of Beard's discharge, testified as follows:

"Q. Can you tell us if you did discharge him, can you tell us why you discharged him? A. His health was very bad and we had some trouble about money affairs in the settling of his accounts."

Not only does this evidence fairly considered show that Beard was totally, continuously, and permanently incapacitated within the meaning of the policy, but in view of the uncontradicted evidence of appellant's officers that Beard was discharged because he was not in good enough health to take care of his debit, and because his health was very bad, and they had some trouble in the settlement of his accounts, it hardly lies in appellant's mouth to insist that such was not his condition at the time of his discharge.

For the same reason we find no merit in the contention that the case should have been submitted to the jury on the question, whether Beard's discharge on October 22, 1928, was because of ill health, or of shortage in his accounts. It is true that Albert O. Payton, appellant's assistant secretary at Cincinnati, testified that according to his recollection Beard was short in his account, and that he was summarily discharged for that reason. Payton was not present at the time of Beard's discharge, but received all of his information from the superintendent and assistant superintendent at Louisville, and his statement as to the cause of the discharge, being a mere conclusion, was not sufficient to overcome the positive evidence of the assistant superintendent and superintendent as to why they did discharge Beard. According to their evidence, Beard was discharged because his health was very bad, and he was not able to keep up his debit. To bring the case within the terms of the policy, all that it was necessary to show was that the cessation of employment resulted from Beard's illness. This the evidence conclusively shows, and though it may be true that Beard's failure to keep up his debit because of his illness was taken into consideration, there is no basis for the insistence that the evidence was sufficient to take the case to the jury on the question whether he was discharged because of a deficiency in his accounts.

Judgment affirmed.